# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FORTECH S.R.L., now known as )
GLOBALLOGIC ROMANIA S.R.L., )
  Plaintiff/Counter-Defendant, )
            )
v.              )
            )   Case No.: 22-cv-11648
MOTOR CONSULTANTS OF   )   Honorable George Caram Steeh
 AMERICA, INC.,      )   Magistrate Judge Curtis Ivy, Jr.
  Defendant/Counter-Plaintiff. )
            )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## <u>EMERGENCY MOTION FOR PROTECTIVE ORDER</u>

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ................................................................................... ii

STATEMENT OF ISSUES PRESENTED .................................................................. iii

STATEMENT OF CONTROLLING AUTHORITY ................................................ iv

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

    A.   The Parties' Claims and Defenses .................................................... 2

    B.   Fortech's Discovery Requests and Entry of a Stipulated Protective Order ........................................................................................... 3

ARGUMENT ...................................................................................................... 6

    A.   MCA Did Not Raise Confidentiality Concerns in its Written Discovery Responses, and this Court Has Already Ordered a Full Production. ................................................................................. 6

    B.   MCA is Fully Protected Through the Protective Order Already in Place and Via the Confidentiality Obligations in the Parties' Underlying Agreement. .............................................................. 7

    C.   MCA Fails to Establish "Good Cause" to Justify an Additional Protective Order. ....................................................................... 8

    D.   The Additional Time and Expense Associated with Production to a Third-Party Expert is Not Justified. ............................................ 11

    E.   MCA Still Has Not Complied with the Magistrate Judge's Order. ............. 13

    F.   There Is No Emergency. ............................................................... 13

    G.   MCA Failed to Hold the Required "Meet and Confer." .............................. 14

CONCLUSION AND RELIEF REQUESTED ....................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Davis v. Wayne Cty. Election Comm'n*,
    2020 U.S. Dist. LEXIS 235221 (E.D. Mich. Dec. 15, 2020)............................ 14

*Mayes v. Wolfenbarger*,
    2007 U.S. Dist. LEXIS 47228 (E.D. Mich. June 29, 2007)................................ 5

*Murr v. United States*,
    200 F.3d 895 (6th Cir. 2000)............................................................................. 12

*Siser N. Am., Inc. v. Herika G. Inc.*,
    325 F.R.D. 200 (E.D. Mich. 2018)...................................................................... 6

**Other Authorities**

L.R. 7.1(a).......................................................................................................... 15, 16

## <u>STATEMENT OF ISSUES PRESENTED</u>

Should the Court deny MCA's "emergency motion" for a protective order where: (1) MCA did not raise confidentiality concerns when responding to Fortech's discovery and this Court already has ordered a full production of the disputed discovery; (2) MCA is fully protected via the protective order already in place; (3) MCA fails to establish good cause for a second protective order; (4) the time and expense associated with retention of a third-party expert to review the dispute discovery is not justified; and (5) there is no actual emergency, and MCA failed to hold a meet and confer before filing its motion?

Fortech answers:            Yes
MCA answers:              No
This Court should answer:     Yes

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Fortech relies on Fed. R. Civ. P. 26(c), and the additional authorities cited herein.

## INTRODUCTION

MCA's "emergency motion" represents the fourth time that MCA is attempting to rehash issues that have already been soundly rejected.  There is no "emergency," and Fortech's discovery requests, which this Court has already reviewed and determined appropriate, cannot, by any stretch, be deemed "oppressive," "embarrassing," or somehow expose MCA to "unfair competition" as it now alleges. (ECF 58, PageID.1031).  The reality is that MCA, through its defense and affirmative counterclaim, has squarely placed its computer code into issue.  The Court ordered MCA to provide access to that code and related data, yet MCA cannot take "no" for an answer, and continues its attempt to avoid having to respond to legitimate discovery.  This has to stop.

As to the stated confidentiality concerns, a stipulated protective order is already in place.  (ECF 17).  MCA has failed to explain why that existing order, which it negotiated and drafted, is somehow insufficient.  In fact, MCA completely ignores the existence of that protective order, as to do so does not fit its narrative and would undermine the basis for its (self-made) "emergency."  MCA is re-plowing issues that already have been resolved or are otherwise pending before this Court, and its baseless speculation regarding what "might" occur if Fortech were to breach its confidentiality obligations is just that – baseless speculation.  This Court should deny the Motion, award Fortech fees and costs, and sanction MCA by dismissal of its counterclaim for

1

its flagrant abuse of the rules and for needlessly causing delays and increased attorneys' fees.

## <u>BACKGROUND</u>

**A.      The Parties' Claims and Defenses**

Fortech is a software development company located in Romania.  As a gross oversimplification, MCA engaged Fortech to develop certain software.  The software code and project related communications, modifications, specifications, and revisions all resided on MCA's computer systems.  In August 2021, MCA terminated Fortech, failed to pay outstanding invoices, and terminated Fortech's access to all of the project software.  Fortech brought suit to recover amounts owed as of the date of termination and to recover any profits earned by MCA through its subsequent and unauthorized use of Fortech's work product.  (ECF 1).

MCA's defense is, essentially, that the work product produced by Fortech did not comply with the project specifications and was significantly over budget.  By way of counterclaim, MCA alleges that "MCA was forced to incur significant costs in replacing and repairing the personnel and work provided, or not provided, by Fortech." (DE 13-2, Counterclaim ¶ 24).  In response to interrogatories, MCA claimed that it had to "deconstruct, rewrite and fix" the Code [post-termination], thereby incurring significant damages.   (ECF 44-3, PageID.777).  It monetized its alleged damages at "consequential damages in excess of $75,000… damages from non performance and

poor quality of over $120,000 as well as disputed charges of over $40.000." *Id.* at PageID.796-97.

**B.      Fortech's Discovery Requests and Entry of a Stipulated Protective Order**

Given that almost all of the project related files reside on MCA's computer servers and cloud accounts to which Fortech no longer had access, among other discovery, Fortech sought access to the code under development and all information relating to the project through the date of termination which resided on MCA's computers and cloud.  To the extent that Fortech alleged that, post-termination, MCA used and sold Fortech's work for profit, and MCA counterclaimed that it had to fix and rewrite Fortech's work product post-termination to make it useable, Fortech also requested access to the software and related data post-termination.

Fortech served its initial discovery requests in November 2022.  Citing confidentiality concerns, MCA refused to respond to any discovery unless a protective order was in place.  Although the underlying contract already contained extensive confidentiality protections, so as to obviate the need for motion practice, Fortech agreed to consider a stipulated protective order.  Thereafter, the parties engaged in extensive negotiation, which culminated in the Court's entry of a stipulated protective order.  (ECF 17).  When MCA still failed to respond to respond to outstanding discovery, Fortech moved to compel.  (ECF 20).  Magistrate Judge Ivy granted Fortech's motion and awarded Fortech attorneys' fees and costs.  (ECF 21).

MCA objected and repeatedly referenced the stipulated protective order to bolster its argument that any delays in responding to discovery were due, in part, to the negotiation of that protective order. (ECF 23, PageID.287-288).   Notably, perhaps because it already had the protections offered by the protective order, **MCA did not raise any objection to production based on confidentiality** in its written response to the outstanding document requests.   (Ex. A, MCA's RFP Responses).   The Court overruled MCA's objection and Magistrate Judge Ivy subsequently awarded Fortech attorneys' fees and costs for having to file the motion to compel and respond to the baseless objections filed by MCA.   (ECF 39, 41).

Ostensibly in compliance with this Court's order, MCA supplemented its discovery responses, but they were still deficient, leading to a second motion to compel.   (ECF 44).   MCA opposed the motion, and again did not move for any additional protective order.   (ECF 46).   In a clear and unambiguous 14-page decision, Magistrate Judge Ivy rejected MCA's arguments, including those based on confidentiality, ordered supplementation of the deficient discovery responses, and found that MCA's positions were not "substantially justified," thereby entitling Fortech to another award of fees.   (ECF 48).   In his decision, Magistrate Judge Ivy expressly rejected any suggestion that MCA would have been entitled to a protective order had it asked for one, noting that "stereotyped and conclusory statements" would not be enough to warrant a protective order.   *Id.* at PageID.887.

Undaunted, MCA objected to Magistrate Judge Ivy's order on Fortech's second motion to compel, rehashing many arguments that had already been rejected, and adding arguments that had not been raised in its initial opposition to the motion – none of which have merit. (ECF 50). The Court has not yet ruled on this objection.

Notwithstanding that MCA's objection is still pending and that issues of confidentiality and whether additional protections may be warranted have been fully briefed, MCA now files an "emergency" motion for protective order, despite Magistrate Judge Ivy's observation that it had failed to do so previously and failed to make the required showings in any event. Given that it cannot raise "new issues" as part of its objection to Magistrate Judge Ivy's order, MCA is attempting to do an end-run around Magistrate Judge Ivy by styling its filing as a stand-alone "emergency motion." *See, e.g., Mayes v. Wolfenbarger*, 2007 U.S. Dist. LEXIS 47228, at *2 (E.D. Mich. June 29, 2007) (confirming that parties "cannot raise new arguments to the district court when he fails to raise them before the magistrate judge"), *citing Murr v. United States*, 200 F.3d 895, 901 n.1 (6th Cir. 2000).

In its Motion, MCA renews the unsubstantiated confidentiality concerns already briefed in its pending objection to Magistrate Judge Ivy's order. Conspicuous by its omission, nowhere does MCA explain why the protective order already in place and confidentiality obligations contained in the parties' underlying contract are insufficient. Nowhere does MCA properly support its claim of an "emergency" or explain why issues that have already been reviewed and rejected should be considered

5

for a fourth time.  Nowhere does MCA establish "good cause" to warrant the issuance of a second protective order.

The time has come to put an end to MCA's repeated refusal to respond to valid discovery requests, this Court's orders, and incessant efforts to delay and force Fortech to waste time and money on motion practice.  Fortech has been awaiting a proper response to its discovery requests since November 2022, and has already incurred thousands of dollars in legal fees to compel MCA's compliance with its discovery obligations.  This has to stop.  In addition to an award of fees to Fortech, this Court should sanction MCA for its recurring flaunting of the Rules and dismiss MCA's counterclaim.

## **ARGUMENT**

### A.   **MCA Did Not Raise Confidentiality Concerns in its Written Discovery Responses, and this Court Has Already Ordered a Full Production.**

In its written response to Fortech's document requests, MCA did not raise a confidentiality objection.  (Ex. A).  At no time did MCA amend its responses to assert a confidentiality objection.  At no time, in response to either of Fortech's motions to compel, did MCA move for a protective order.  As such, any objection based on confidentiality has been waived.  *See, e.g., Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 210 (E.D. Mich. 2018) (untimely objections to discovery requests are waived).

Moreover, this Court already entered an order compelling MCA to fully respond to the outstanding discovery.  (ECF 39).  The discovery requests were served in

November 2022.  It is now almost one and a half years later.  Even if the current motion

had substantive merit, and it does not, this is "too little, too late."  The Motion should

be denied.

**B.  MCA is Fully Protected Through the Protective Order Already in Place, and Via the Confidentiality Obligations in the Parties' Underlying Agreement.**

The underlying contract contains extensive confidentiality provisions.

Paragraph 11 of the Parties' Framework Agreement provides:

11.1    If the parties have signed or will sign a separate Non-Disclosure Agreement ("**NDA**") during the term of this Agreement, that NDA will govern all the confidentiality issues related to the collaboration between Client and Service Provider under this Agreement. In the absence of such NDA, the following provisions of this Section 11 apply:

11.2    During the term of this Agreement and for five (5) years thereafter, each Party to this Agreement will use reasonable care to prevent the unauthorized use or dissemination of the other Party's confidential information.

11.3    Reasonable care means at least the same degree of care the receiving party uses to protect its own confidential information of a similar nature from unauthorized disclosure, but in no event less than commercially reasonable care.

11.4    Confidential information is limited to information clearly marked as confidential or disclosed orally that is identified as confidential when disclosed and summarized and identified as confidential in writing to the receiving Party within fifteen (15) calendar days of disclosure or would be considered confidential by a reasonable businessman. Confidential information does not include information that:

      a)   is lawfully known by the receiving Party at the time of disclosure;

      b)   is or becomes, through no fault of the receiving Party, available to the public;

      c)   is independently developed by the receiving Party without use of such Confidential Information of the disclosing
      Party;

      d)   is lawfully received by the receiving Party from a third party that to the receiving Party's knowledge does not have an obligation of confidentiality to the disclosing Party;

      e)   is disclosed by the receiving Party free of restriction with the written approval of the disclosing Party;

      f)   is disclosed by the disclosing Party to a third party free of restriction; or

      g)   is required to be disclosed by law or rule of relevant regulatory authority, in which event the receiving Party shall provide prompt notice to the disclosing Party of such required disclosure (to the extent the receiving Party is legally permitted to do so) so that the disclosing Party may seek a protective order or other relief.

In the case of events (b), (c), (d), (e), (f) and (g) above, the removal of the restriction shall be effective only from and after the occurrence of the applicable event.

7

(Agreement, Ex. A to Counterclaim, ECF 13-3 at PageID.88).

Though it was "belt and suspenders," before MCA would respond to <u>any</u> discovery, it insisted on entry of a protective order to address additional confidentiality obligations it claimed to have. That protective order, negotiated and largely drafted by counsel for MCA, was executed by the Parties and entered as an order of this Court. (ECF 17). Amazingly, and disingenuously, in its emergency motion MCA makes no mention of the stipulated protective order. It fails to explain why the protections that it insisted upon and that were entered as an order of this Court are insufficient. On this basis alone, this Court should deny the Motion. If MCA has a problem with the confidentiality provisions contained in the protective order that its own counsel drafted and executed on MCA's behalf, its recourse is with its counsel, and it should not be wasting either the Court's or Fortech's time.

**C.    MCA Fails to Establish "Good Cause" to Justify an Additional Protective Order.**

As MCA correctly notes, it is not entitled to a protective order unless it can demonstrate "good cause". (ECF 58, PageID.1050). "To show good cause, the movant must articulate specific facts showing 'clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.*, *citing*, *Encompass Pet Group, LLC v. Allstar Prod Group, LLC*, 2023 U.S. Dist. LEXIS 7024 at *12 (E.D. Mich. Jan. 13, 2023). "Good cause cannot be established upon some general or speculative alleged harm." *Id.*, *citing Flaff v. City of Detroit*,

U.S. Dist. LEXIS 78501 (E.D. Mich. August 4, 2010). Yet, conclusory statements and speculative harm is all that MCA offers. Nowhere in its brief does MCA explain how it has met the high standard required for entry of an additional protective order.

Instead, MCA spends much of its Motion and devotes substantial portions of its supporting declarations explaining how it is an expert in its field and claiming that it competes directly with Fortech. This is false. MCA describes itself as a company that provides "operational, executive, and managerial services to customers across a variety of industries including construction, manufacturing, distribution, automotive, healthcare, banking and financial institutions." (ECF 58, PageID.1038). Fortech is a software development company also serving a variety of industries. (ECF 1, PageID.2). This does not make them competitors.

MCA claims that it "recently" discovered that Fortech holds itself out as an expert in software engineering for products geared to the construction industry. (ECF 58, PageID.1046). This is hardly news. And, moreover, that Fortech writes and has written software for companies in the same industry space as MCA operates does not make them competitors. Nothing in the Parties' contract precludes Fortech from working for other clients in similar industries. Indeed, if that were the case, Fortech would have been out of business years ago as MCA claims to work in a variety of industries, including, without limitation, "construction, manufacturing, distribution, automotive, healthcare, banking and financial institutions." Effectively, MCA is seeking to pre-empt Fortech from working in any of these fields. Presumably, it is

precisely because Fortech had experience in the industry in which MCA worked that MCA engaged Fortech.

Having falsely labelled the Parties as "competitors," MCA strings together a series of unrelated facts which, it speculates, demonstrates a "risk" that Fortech might disclose confidential information. MCA notes that in June 2022 (almost a year after it terminated Fortech), Fortech listed on its website a case study regarding a cloud-based project on which Fortech worked for another client in the construction industry. *Id.  See* website excerpt at ECF 56-1, PageID.1012-15. A month later, Fortech sued MCA. *Id.* at PageID.1047. Then, four months later, Fortech entered into an agreement to merge with multinational conglomerate. *Id.* From these facts and this chronology, MCA somehow concludes that this demonstrates that Fortech is likely to steal its ideas.

This "Oliver Stone-esq" theory is nothing more than a figment of MCA's imagination. The project listed on Fortech's marketing brochure is identified as having been ongoing for "4+ years," meaning that it started over two years prior to the project with MCA. (ECF56-1, PageID.1013). That such project may have been for a client in the same industry as MCA is meaningless. Indeed, if MCA was such a leader in the field, as it professes to be, presumably it would have some awareness of what its competitors are doing. Yet MCA points to no facts that establish, or even suggest, that Fortech has improperly disseminated MCA's proprietary ideas, if any, or that some

10

competitor with whom Fortech worked developed a substantially similar product. MCA provides nothing but sheer speculation.

Similarly, Fortech's merger with a multinational conglomerate does nothing to establish or even suggest that Fortech has, or likely will, violate its confidentiality obligations.  That MCA can point to nothing other than Fortech's and its affiliates' possible development of software for others in the industry speaks volumes.  Far from establishing "good cause," MCA relies upon nothing other than wild speculation, unsupported by any material fact.

MCA has all the protections it needs in the protective order already entered by this Court and in the confidentiality provisions of the underlying contract.  There is no "good cause" to support the issuance of a second protective order, and the Motion should be denied.

## D.    The Additional Time and Expense Associated with Production to a Third-Party Expert is Not Justified.

MCA seeks an order that the already-ordered production be made only to experts and with an "attorneys-eyes-only" designation.  Magistrate Judge Ivy already rejected this suggestion, noting that MCA had not previously requested this type of protection and observing that, "[h]ad it, the request would likely be denied because 'the party moving for restrictive attorneys' eyes only designation must detail the alleged harm it is likely to suffer absent the requested protection 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory

statements.'" (ECF 48, PageID.887) (citations omitted). As it is too late to insert this new issue as part of its objection to Magistrate Judge Ivy's order, it is improper to raise it under the guise of a stand-alone "emergency motion," which is no more than an attempt to further appeal the order granting Fortech's most recent motion to compel. *Murr*, 200 F.3d at 901 n.1. Even were it not too late, MCA still fails to provide the "particular and specific demonstration of facts" necessary to support issuance of a second protective order.

Magistrate Judge Ivy also noted that MCA had previously made the suggestion to Fortech that the Parties agree to submit the requested data to an independent expert, and that Fortech rejected that suggestion. (ECF 48, PageID.887). He found no fault with Fortech for its rejection of this proposal. Fortech is simply seeking access to its own work (pre-termination) and, given that MCA placed the post-termination condition of the code at issue through its counterclaim, Fortech is entitled to see what was "fixed" and how (post-termination). It is in the best position to do so in-house as it wrote the code that forms the basis for this project and does not need to incur the cost of engaging an outside expert for this purpose. This case was filed in July 2022, and the Fortech has been seeking this discovery since November 2022. Bringing a third-party up to speed would cost a small fortune and cause further delays. This is not a huge case – Fortech is seeking to recover approximately $155,000 in unpaid invoices. Already, the legal fees wasted dealing with MCA's refusal to produce necessary discovery is disproportionate to the amount at issue. Fortech has been

12

waiting since November 2022 for discovery it properly requested.  Given that MCA's belated request is based upon nothing more than idle speculation, its request for submission to an expert with an attorneys' eyes only restriction is overkill and completely unnecessary.

### E.    MCA Still Has Not Complied with the Magistrate Judge's Order.

Unsupported by any declaration, MCA makes the bold statement that "Fortech has complete access to the tools that it used during its work" and nothing further needs to be produced.  (ECF 58, PageID.1051-52).  This is patently false.  (Ex. B, Declaration of Marius Budiu).  MCA's request for an order precluding it from having to produce additional information is inconsistent with its averment that it has already produced everything.  Fortech anticipates filing a motion for sanctions and contempt given MCA's repeated refusal to comply with this Court's rulings.

### F.    There Is No Emergency.

MCA accuses Fortech's counsel of tactically planning their vacations so that this Court would, presumably, rule on MCA's pending objections to Magistrate Judge Ivy's order before MCA could "meet and confer" on its request for a second protective order.  In MCA's own words, "[g]iven that the Court may rule on those objections [to Magistrate Judge Ivy's order] and such a ruling could order production of MCA's proprietary work without the opportunity to consider this Motion for Protective Order, Defendant files this Emergency Motion."  (ECF 58, PageID.1032).  In other words, MCA recognizes the likelihood that this Court will overrule its objections and is trying

13

to do an "end run" around this likely outcome by asking the Court to first rule on its duplicative parallel motion without the fully developed record.

But there is no "emergency." Nothing prevented MCA from moving for a protective order a year and a half ago when Fortech first served its discovery requests. This is nothing other than a shameless effort to undermine these proceedings and forestall a ruling on MCA's pending objection to Magistrate Judge Ivy's order. *See, e.g., Davis v. Wayne Cty. Election Comm'n*, 2020 U.S. Dist. LEXIS 235221, *6 (E.D. Mich. Dec. 15, 2020) (denying a so-called emergency motion as "simply based on [a party's] desire for immediate rulings by the Court, rather than any circumstance constituting an actual emergency.").

The Motion should be denied.

### G.   MCA Failed to Hold the Required "Meet and Confer."

The Local Rules require a "meet and confer" before filing a motion. L.R. 7.1(a). To justify its failure to conduct a "meet and confer," MCA falsely claims that Fortech refused to speak and by calling this an "emergency" motion, MCA believes it can ignore its obligation to "meet and confer." There is no such exception in the Local Rules, and Fortech did not refuse to "meet and confer."

On February 12, 2024, MCA's counsel, bristling at Fortech's insistence on MCA's compliance with Magistrate Judge Ivy's order, threatened, "[i]f your client will not agree to terminate its continued efforts to unreasonably expand on the discovery of MCA's proprietary current code/work, we will file a motion for protective

order." (ECF 58-1, PageID.1062). As Magistrate Judge Ivy had already rejected MCA's argument that Fortech was seeking information beyond that which it had requested, Fortech was at a loss to understand this demand. (ECF 48, PageID.886-87). Thus, Fortech's counsel immediately responded:

> As to your suggestion that somehow we have "unreasonably expand[ed]" our discovery and your demand that we agree to stop doing so, I am at a total loss to comprehend that accusation. We will not agree to anything that limits our right to insist on proper discovery responses and compliance with the MJ's order. If you feel the need to rehash the issues for a third time through the filing of a protective order, you can be assured of a vigorous defense and a further award of attorneys' fees.

(ECF 58-1, PageID.1061). In that same e-mail, Fortech's counsel also asked MCA's counsel when she would be available for a "meet and confer." *Id.* MCA's counsel never responded as to when she would be available.

Instead, on February 21, 2024, MCA's counsel sent a letter accusing Fortech of being deficient on its own discovery responses (which MCA has had in its possession since July 2023). Clearly acknowledging that there was no urgency to that request, MCA requested a "meet and confer" "this week or next week." *Id.* at PageID.1059. Far from refusing to "meet and confer," Fortech's counsel responded:

> Kristyn, I am in receipt of your request for a "meet and confer" and have forwarded it on to my client contact for its input. I heard back that he is on vacation through the 28th. On the subject of vacation, Nasseem is away next week, and I am away the following week. May I suggest that we schedule the "meet and confer" for a convenient time when both Naseem and I are back and we have had an opportunity to speak with our client (i.e. the later part of the week of 3/11 or the beginning of the next week)?

*Id.* at PageID.1058. Rather than simply picking up the phone or insisting on an earlier "meet and confer," **MCA's counsel did not respond to this e-mail and did not object to delaying the "meet and confer" until counsel returned from vacation.** Instead, MCA chose to further waste the Court's time and the parties' resources with this Motion.

The suggestion that counsel and their client somehow pre-planned their vacations to delay things, thereby leaving MCA no choice other than to file an emergency motion without time for a mandatory "meet and confer" is preposterous. Counsel do not have a "crystal ball" and certainly did not plan their vacations to gain some sort of tactical advantage over motions that had not even been filed when their vacations were scheduled. Nothing prevented MCA's counsel from insisting on an earlier "meet and confer." Nothing prevented MCA from moving for a protective order a year and a half ago when Fortech first served its discovery requests. There is no justification for filing a motion for protective order without the required "meet and confer" and for this reason, too, the Motion should be denied.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Fortech respectfully requests that this Court: (1) deny the Emergency Motion for Protective Order; (2) grant such other relief, including additional costs and attorneys' fees incurred in responding to the Motion as is appropriate; and (3) sanction MCA by dismissal of its counterclaim.

                                Respectfully submitted,
                                FORTECH S.R.L., by its attorneys,

Dated:  March 26, 2024

                            By: /s/ Nasseem S. Ramin
                                Nasseem S. Ramin (P73513)
                                John H. Perten (BBO#548728)

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Nasseem S. Ramin*