UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORTECH S.R.L.,

   Plaintiff/Counter-Defendant,

-vs-

MOTOR CONSULTANTS OF
AMERICA, INC.,

   Defendant/Counter-Plaintiff.

Case No: 2:22-cv-11648

Hon. George Caram Steeh
Magistrate Judge Curtis Ivy, Jr.

## REPLY IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER.

Defendant/Counter-Plaintiff, Motor Consultants of America, Inc. ("Defendant" or "MCA"), by and through its counsel, Myers & Myers, PLLC, and for its Reply submits the following:

Notably, Fortech presents **zero** legal argument in opposition to the substance of MCA's motion. Thus, it is undisputed that:

1) MCA's post-termination work constitutes a trade secret or other confidential research, development or commercial information that can be protected under Fed. R. Civ. P. 26(c)(1)(G).

2) The information MCA seeks to protect is sensitive business information and/or trade secrets that can justify an AEO designation and to which

1

> Fortech had no right of access before the underlying contract was terminated.
>
> 3) The information MCA seeks to protect is similar to that in the *Deloitte Tax* case in which the court ordered the production of source code and technical documents under an AEO designation and to a third-party expert.

Fortech takes issue with MCA's characterization of Fortech as a competitor because MCA is not, on the whole, a software development company. Indeed, MCA hired Fortech to develop the software at issue. But this discovery dispute revolves around software developed for MCA after Fortech was terminated from the project. Fortech provides no legal authority for the contention that MCA and Fortech have to be direct competitors with each other before an AEO designation is justified. Neither does Fortech cite any legal authority for the contention that MCA would have to show that Fortech has already improperly disseminated MCA's proprietary ideas before this Court can protect MCA's sensitive business information or trade secrets from future disclosure. Such a requirement would undermine the entire purpose of Fed. R. Civ. P. 26(c)(1)(G). Tellingly, Fortech blames MCA for not submitting evidence that Fortech's merger with a multinational conglomerate would "suggest that Fortech has, or likely will, violate its confidentiality obligations" but Fortech notably chose not to produce any evidence to this Court to refute MCA's concerns over the protection of MCA's proprietary information that is already in

Fortech's possession. Fortech has refused to disclose the people or entities who now have access to that information within the Hitachi umbrella. Fortech also does not dispute that it has the means, resources, and skill, to steal MCA's work product – even if done so unintentionally simply because the knowledge gained during an analysis cannot be erased.

Moreover, although Fortech complains that there is a current protective order and non-disclosure agreement in place, that does not protect MCA from having to disclose MCA's proprietary trade secrets directly to Fortech, which is what MCA seeks in the instant Motion. Contrary to Fortech's conclusory argument, MCA does not seek to preclude Fortech from working for other clients in other or even similar industries. MCA simply wants to protect its proprietary information, created from decades of industry-leading research and experience, from being misused by Fortech or others within the Hitachi umbrella.

Importantly, <u>Fortech</u> filed this lawsuit, not MCA. Fortech alleges (among other things) that MCA has used Fortech's code without permission. Thus, while Fortech pretends that the entire basis of seeking post-termination discovery is because of MCA's counter-claims and MCA's attempts to defend itself from Fortech's onslaught (*see* ECF 60 at PAGEID.1178), that is false. Fortech would have sought MCA's post-termination and proprietary work product whether MCA filed a counter-claim or not. MCA's concerns about handing the proprietary information to

Fortech is underscored by Fortech's own insistence that "[Fortech] is in the best position to [see what was 'fixed' and how] in-house as it wrote the code that forms the basis for this project." (ECF 60, at PAGEID.1178.) Fortech deceptively claims that MCA has not complied with the order to produce all pre-termination "access" by pointing to a letter its counsel wrote that relates almost entirely to post-termination production. MCA has given Fortech what it was able to see before the contract was terminated. Fortech has no right to directly see what existed afterward.

Fortech then complains that it would be too expensive to engage a third-party expert for this review, stating this is "not a huge" case because it is only seeking to recover $155,0000 in unpaid invoices. Even if it were true, $155,000 is a lot of money, though perhaps not to a multinational corporation. But, unsurprisingly, Fortech's assertion is false. Fortech described its damages in response to Defendant's Interrogatory No. 14 as including "[i]n addition to the $155,809.50 in unpaid invoices…Fortech is entitled to recover interest and attorneys' fees, which continue to accrue…Fortech was forced to absorb the salaries of the persons who had been dedicated to the MCA project until they could be billed out to another project [and] [t]he loss through the anticipated completion of the project is 38,531.2 (Euro)." (Ex. 1, Interrogatory Response Excerpts.) MCA disputes that it owes Fortech any of these amounts or categories. Nonetheless, Fortech has failed to further specify the calculation of its claimed interest damages or the value of the salaries it allegedly

4

had to absorb. Even still, Fortech points to no legal authority for its contention that the costs of a third-party expert, or the so-called low value of the claims, would sufficiently outweigh MCA's legitimate right to protect MCA's proprietary trade secrets and work product.

Additionally, Fortech's narrative that its discovery requests were clear and completely supported by the Court's ruling on Fortech's First Motion to Compel is exasperatingly false. Fortech filed a motion to compel responses and production on the broad requests. MCA failed to timely respond to the motion and it was granted. It is regrettable. But that motion did not address the nuanced merits of this post-termination issue. MCA consistently objected to producing its post-termination work product, argued that Fortech did not request the access and information that is at issue here and argued that Fortech changed the scope of its requests as the discovery dispute progressed. As demonstrated in the briefing, Fortech argued only for the post-termination code, not complete access in its Second Motion to Compel. Thus, MCA argued that the post-termination code should be protected. As MCA argued in its objections to the Magistrate's Order, post-termination "access" was not directly at issue there but became an issue with the Magistrate's Order. Notwithstanding, while this Motion was pending, this Court ruled that the post-termination "access" is relevant based on the claims at issue. (ECF 61.) In that Order, this Court stated that the current Motion for Protective Order is the "proper procedure to determine if

5

further protection is necessary." (*Id.*, at PAGEID.1216.) Thus, MCA's motion is timely and this Court can protect further production as contemplated under the Federal Rules and caselaw cited by MCA.

Finally, MCA met its obligations to meet and confer. As soon as MCA's counsel notified Fortech's counsel that it intended to file this very motion, Fortech's counsel responded "[i]f you feel the need to rehash the issues for a third time through the filing of a protective order, you can be assured of a vigorous defense…" (ECF 58-1, at PAGEID.1061.) That was after counsel for the parties had a phone call in which this post-termination production issue was discussed. (*Id.*) MCA's counsel was still willing to discuss the issue after Fortech "reviewed" MCA's supplemental production, and asked for another meet and confer regarding same. Fortech's counsel responded that vacations would delay that process but then, the same day, filed a response to MCA's objections to the Magistrate's Order, in which Fortech again insisted on complete "access" to post-termination systems and information. MCA was thus able to ascertain that the instant motion would be opposed.

Thus, for the reasons discussed herein and in its Emergency Motion for Protective Order, MCA respectfully requests that this Court grant its Motion.

|  | Respectfully submitted,<br>MYERS & MYERS, PLLC |
|---|---|
| Dated: April 2, 2024 | */s/* Kristyn R. Mattern<br>Kristyn R. Mattern (P77548)<br>915 N. Michigan Avenue |

Suite 200
Howell, MI  48843
(517) 540-1700
kmattern@myers2law.com